# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **FEDERAL INSURANCE COMPANY,** as subrogee of MonoSol Holdco, LLC, | ) ) ) | |
| Plaintiff, | ) ) | **No. 12 C 3465** |
| v. | ) ) | **Judge Ruben Castillo** |
| **J.K. MANUFACTURING CO.,** | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Federal Insurance Company ("Federal Insurance"), as subrogee of MonoSol Holdco, LLC ("MonoSol"), brings this diversity action against J.K. Manufacturing Company ("J.K.") for negligence (Count I), breach of express and implied warranties (Count II), and products liability (Count III). (R. 1, Compl. ¶¶ 15-31.) Presently before the Court is J.K.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, J.K.'s motion is denied.

### RELEVANT FACTS

MonoSol is a limited liability company ("LLC") incorporated in Delaware with its principal place of business in Merrillville, Indiana. (*Id.* ¶ 2.) During the time relevant to this action, MonoSol owned the property located at 1701 County Line Road, Portage, Indiana (the "MonoSol Facility"). (*Id.*) MonoSol manufactures plastic water soluble films inside the MonoSol Facility. (*Id.*) Federal Insurance is an insurance provider with its principal place of business in Warren, New Jersey. (*Id.* ¶ 1.) At all times relevant to this action, Federal Insurance provided property and business interruption insurance coverage to MonoSol and related MonoSol entities. (*Id.* ¶ 3.) J.K. is an Illinois corporation with its principal place of business in

Bedford Park, Illinois. (*Id.* ¶ 4.) At all times relevant to this action, J.K. was in the business of designing and manufacturing cylinder drums used in production lines. (*Id.*)

On or about November 6, 2009, MonoSol hired J.K. to design and manufacture four Monoflow spiral cylinder drums to replace baffled shell cylinders that were originally installed on production lines at the MonoSol Facility. (*Id.* ¶ 5; R. 1-1, Ex. A, Quote & Purchase Order at 2-4.) J.K. charged MonoSol $152,000.00 for the four cylinder drums. (R. 1-1, Ex. A, Quote & Purchase Order at 2-4.) The MonoSol Facility production lines each have head and tail cylinder drums. (R. 1, Compl. ¶ 6.) Head cylinder drums are used to pre-heat the plastic water soluble film, and tail cylinder drums are used to cool the plastic water soluble film after it comes out of the oven. (*Id.* ¶ 7.)

In February 2010, the MonoSol Facility's Production Line No. 2 was upgraded with new head and tail Monoflow cylinder drums fabricated by J.K. (*Id.* ¶ 6.) Federal Insurance alleges that on or about May 26, 2010, Production Line No. 2 began making abnormal noises and visible cracking was noted on the tail cylinder drum. (*Id.* ¶ 8.) The cracking caused the tail cylinder drum to vibrate, which in turn damaged the existing production line. (*Id.*) J.K. repaired the tail cylinder drum, and it was returned to service on June 8, 2010. (*Id.* ¶ 9.) Prior to reaching full production, however, the tail cylinder drum again began making noise. (*Id.*) According to Federal Insurance, the cracking in the tail cylinder drum and the associated damage to the existing assembly line caused Production Line No. 2 to be out of service until June 12, 2010. (*Id.* ¶ 10.) That day, the tail cylinder drum was removed and replaced with the original baffled shell cylinder. (*Id.*) The tail cylinder drum was removed by cutting Production Line No. 2's stainless steel carrier belt. (*Id.*) On or about June 21, 2010, Production Line No. 2 once again began making abnormal noises and visible cracking was noted on the head cylinder drum. (*Id.* ¶

2

11.) The cracking caused the drum to vibrate, which in turn damaged the existing production line. (*Id.*) According to Federal Insurance, the cracking in the head cylinder drum and the associated damage to the existing assembly line caused Production Line No. 2 to be out of service until June 28, 2010, when the head cylinder drum was removed and replaced with the original baffled shell cylinder. (*Id.* ¶ 12.) The head cylinder drum was removed by cutting Production Line No. 2's stainless steel carrier belt. (*Id.*)

In March 2010, the MonoSol Facility's Production Line No. 1 was upgraded with new tail and head Monoflow cylinder drums fabricated by J.K. (*Id.* ¶ 6.) Federal Insurance avers that on or about September 3, 2010, Production Line No. 1 began making abnormal noises and visible cracking was noted on the tail cylinder drum. (*Id.* ¶ 13.) The cracking caused the tail cylinder drum to vibrate, which in turn damaged the existing production line. (*Id.*)

As a result of the cracking of the cylinder drums and the damage to Production Line Nos. 1 and 2, MonoSol "sustained property and business interruption damage in an amount in excess of $866,252.98 exclusive of interest and costs." (*Id.* ¶¶ 14, 18, 30.) MonoSol thus made claims to Federal Insurance pursuant to its insurance policy, and Federal Insurance reimbursed MonoSol for those claims in an amount in excess of $866,252.98. (*Id.* ¶ 14.) Therefore, Federal Insurance avers that it is legally, equitably and contractually subrogated to the claims of MonoSol against any responsible third parties, including J.K. (*Id.*) Federal Insurance seeks a judgment in its favor "in an amount in excess of $866,252.98, together with interest and the cost of this action, and any other relief that this Court deems equitable and proper." (*Id.* ¶¶ 18, 31.)

## PROCEDURAL HISTORY

Federal Insurance filed a three-count complaint against J.K. in this Court on May 7, 2012. (R. 1, Compl.) In Count I, Federal Insurance alleges that J.K. was negligent in the design and

3

manufacture of the Monoflow cylinder drums. (*Id.* ¶¶ 15-18.) In Count II, Federal Insurance asserts a claim for breach of express and implied warranties, (*id.* ¶¶ 19-26), and in Count III, Federal Insurance alleges that J.K. is liable under a products liability theory, (*id.* ¶¶ 27-31).

On August 1, 2012, J.K. filed a motion to dismiss Counts I and III of Federal Insurance's complaint. (R. 9, Mot.) J.K. argues that the negligence and products liability causes of action should be dismissed because damages for economic losses cannot be recovered in tort pursuant to the economic loss doctrine[1] set forth in *Moorman Manufacturing Company v. National Tank Company*, 435 N.E.2d 443 (Ill. 1982). (R. 9, Def.'s Mem. at 2.)

On December 27, 2012, Federal Insurance filed its response to J.K.'s motion, (R. 28, Pl.'s Resp.), arguing that Indiana law, and not Illinois law, governs this dispute because "the law to be applied is that of the state where the accident [or] injury occurred." (R. 28, Pl.'s Resp. at 3.) (quoting *Burlington N. & Santa Fe Ry. Co. v. ABC-NACO*, 906 N.E.2d 83, 92 (Ill. Ct. App. 1st Dist. 2009)). Federal Insurance further argues that the economic loss doctrine does not bar its claims for negligence and strict products liability against J.K. because, it asserts, it may recover damages under either general negligence or products liability principles if a defective product causes damage to other property. (*Id.* at 4) (citing *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153-54 (Ind. 2005)). Alternatively, Federal Insurance argues that even if Illinois law applies, its claims survive the economic loss doctrine under the "sudden and dangerous occurrence" exception, whereby a plaintiff who "has sustained property damage or personal injury resulting from a sudden or dangerous occurrence" may recover damages. (*Id.* at 6) (quoting *Muirfield*

---

[1] The phrase "economic loss doctrine" is used interchangeably with the phrase "economic loss rule." *See* Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 585 n.1 (2009).

*Village-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 235, 247 (Ill. Ct. App. 2d Dist. 2004)).

On January 10, 2013, J.K. filed its reply in support of its motion to dismiss. (R. 29, Def.'s Reply.) J.K. argues that Illinois law governs this action because there is no substantive difference between Illinois and Indiana law, and that Federal Insurance's claims are barred by the economic loss doctrine under both Illinois and Indiana law. (*Id.* at 2-8.)

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff by accepting as true all of the well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.)

5

"'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). After all, "the plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. Therefore, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

## ANALYSIS

### I. Whether the Court should apply Illinois or Indiana state law

Federal Insurance is a resident of the State of New Jersey with its principal place of business in New Jersey, and J.K. is a resident of the State of Illinois with its principal place of business in Illinois. (R. 1, Compl. ¶¶ 1, 4.) Federal Insurance avers that it has paid the entire claim of its insured, MonoSol, and therefore it is the only real party in interest to this action. *See United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380-81 (1949) ("If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name) (citing 3 Moore, Federal Practice 1339 (2d Ed.); *Krueger v. Cartwright*, 996 F.2d 928, 931-32 (7th Cir. 1993) ("The general rule in federal court is that if an insurer has paid the entire claim of its insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a) and must sue in its own name.") (citing *Aetna Cas. & Sur. Co.*, 338 U.S. at 380-81). Further, Federal Insurance seeks $866,252.98 for property and business interruption damage sustained by MonoSol, (*id.* ¶¶ 14, 18, 30), and the amount in controversy thus exceeds $75,000. Therefore, the Court has diversity jurisdiction to hear this action pursuant to 28 U.S.C. § 1332.

A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which state's substantive law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co.*, 313 U.S. at 496)). "Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Auto-Owners Ins. Co.*, 580 F.3d at 547 (7th Cir. 2009) (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991)). In the instant action, J.K. argues that Federal Insurance's negligence (Count I) and products liability (Count II) causes of action should be dismissed because they are barred by the economic loss doctrine as set forth by the Illinois Supreme Court in *Moorman Manufacturing Co.*, 435 N.E.2d 443. (R. 9, Def.'s Mem. at 3-7.) In response, Federal Insurance contends that Indiana law, rather than Illinois law, applies. (R. 28, Pl.'s Resp. at 3.)

As the parties do not agree on whether Illinois or Indiana law applies, the Court looks to Illinois choice-of-law rules to determine whether Illinois or Indiana law applies. In Illinois, before a court "undertakes a choice-of-law analysis to determine which state's law governs a claim, [it] must look to see whether a conflict exists." *Sterling Fin. Mgmt., L.P. v. UBS PaineWebber, Inc.*, 782 N.E.2d 895, 899 (Ill. App. Ct. 1st Dist. 2002). "This is a threshold question because choice-of-law considerations are not implicated unless there is an actual conflict in the law of the two states." *Id.*; *see also Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome.") (citing *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 716 N.E.2d 829 (Ill. App. Ct. 5th Dist. 1999); *Kramer v. Weedhopper of Utah, Inc.*,

562 N.E.2d 271 (Ill. App. Ct. 1st Dist. 1990)); *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) ("before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states"). "A conflict exists when the application of one state's law over another will make a difference in the outcome." *Sterling Fin. Mgmt.*, 782 N.E.2d at 899 (citing *Malatesta v. Mitsubishi Aircraft Int'l, Inc.*, 655 N.E.2d 1093, 1096 (Ill. App. Ct. 1st Dist. 1995)). "If the law of the jurisdictions in question is essentially the same on the disputed issue, there is no need to apply a choice-of-law analysis." *Id.* (citing *Wreglesworth v. Arctco, Inc.*, 738 N.E.2d 964, 969 (Ill. App. Ct. 1st Dist. 2000)).

Federal Insurance does not argue that a conflict exists. Rather, in its opposition brief, Federal Insurance simply asserts that Indiana Law governs. (R. 28, Pl.'s Resp. at 3.) J.K., on the other hand, argues that Illinois law applies because there is no substantive difference between Illinois and Indiana law with respect to the economic loss doctrine. (R. 29, Def.'s Reply at 2.) Specifically, J.K. contends that "[b]oth Illinois and Indiana recognize the economic loss doctrine. Although the application varies slightly, in both states, the underlying principles remain the same." (*Id.* at 2-3) (citing *Moorman Mfg. Co.*, 436 N.E.2d 443; *Ind'polis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722 (Ind. 2010)). Thus, the Court must decide whether there is a conflict in the laws of the two states regarding the economic loss doctrine when applied to Federal Insurance's claims. "[I]f there is no conflict, Illinois law applies as the law of the forum." *Sterling Fin. Mgmt.*, 782 N.E.2d at 899 (citing *Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 719 N.E.2d 1092, 1096 (Ill. App. Ct. 1st Dist. 1999)).

    **A.**    **Whether Illinois and Indiana law on the economic loss doctrine conflict**

Generally, where "a defective product causes *physical* harm to a person or to property other than the product itself, a tort action may be brought." Johnson, *supra* note 1, at 549-550; *see also* Ralph C. Anzivino, *The Economic Loss Doctrine: Distinguishing Loss From Non-Economic Loss*, 91 Marq. L. Rev. 1081, 1082 (2007-2008) (noting that if a defective product "causes 'personal injury' or 'other property' damage, then negligence and strict liability theories are available") (citing Restatement (Third) of Torts: Prods. Liab. § 1 (1998)).  By contrast, where the loss is solely economic in nature, "such as when a product defect injures the product itself or impairs the product's value," the economic loss doctrine bars the plaintiff from pursuing a remedy in tort and the plaintiff is instead "relegated to compensation under contract principles," Johnson, *supra* note 1, at 549-50; Anzivino, *supra*, at 1082. "The nature of the loss incurred dictates whether the [plaintiff's] claim is to be brought in contract or tort." Anzivino, *supra*, at 1082 (citing *E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 869-71 (1986)).

Both Illinois and Indiana have adopted the economic loss doctrine. Illinois' economic loss rule has its origins in *Moorman Manufacturing Co.*, 435 N.E.2d at 453, where the Illinois Supreme Court held, in relevant part, that "a plaintiff cannot recover for solely economic loss [from a defective product] under the tort theories of strict liability, [and] negligence." In *Moorman*, the Illinois Supreme Court defined economic losses as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property . . ." as well as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Moorman Mfg. Co.*, 435 N.E.2d at 449 (quoting Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages-Tort or Contract?*, 114 U. Pa. L. Rev. 539, 541 (1966); Note, *Economic Loss in*

*Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966)); *see also Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 N.E.2d 45, 48 (Ill. 1997). The rationale underpinning the *Moorman* rule is that "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence[, whereas t]he remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract." *Moorman Mfg. Co.*, 435 N.E.2d at 450.

Illinois recognizes several exceptions to the *Moorman* economic loss rule, including, as relevant here, "where the plaintiff sustained damage, *i.e., personal injury or property damage*, resulting from a sudden or dangerous occurrence." *In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (internal citations omitted) (citing *Moorman Mfg. Co.*, 435 N.E.2d at 450, 452). The exception requires personal injury or property damage coupled with a sudden, dangerous, or calamitous event. *Id.* at 275-76. In *Trans States Airlines*, the Illinois Supreme Court was presented with the question of whether there could be tort recovery when the damage caused by the defective product was confined to the product itself. 682 N.E.2d at 48. The Illinois Supreme Court held that the exception does not apply, and therefore an Illinois plaintiff cannot recover in tort, when a defective product only damages itself. *Id.* at 54-55. The court rationalized its holding by noting that "when the product damages itself only, the risks against which products liability law was designed to protect simply are not realized." *Id.* The court further noted that under this approach, manufacturers maintain an incentive to produce safe products, as they may still be subject to liability in tort where their product causes personal injury or "other property damage." *Id.* at 53.

Indiana first applied the economic loss doctrine in *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1074-75 (Ind. 1993), *modified on other grounds*, 644 N.E.2d 84 (Ind. 1994), a case brought under the Indiana Products Liability Act, Ind. Code § 33-1-1.5-2 (1988). *See Gunkel*, 822 N.E.2d at 152 (discussing history of economic loss doctrine in Indiana). The Indiana economic loss doctrine provides that "contract is the sole remedy for the failure of a product or service to perform as expected." *Id.* The Indiana Supreme Court later extended the economic loss doctrine to negligence actions premised on the failure of a product to perform as expected. *Id.* Thus, under the Indiana Products Liability Act and Indiana's common law on negligence,

> damage from a defective product . . . may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product . . . itself and purely economic loss arising from the failure of the product . . . to perform as expected.

*Gunkel*, 822 N.E.2d at 153.

The Indiana Supreme Court has held that "'economic losses' occur when there is no personal injury and no physical harm to other property." *Gunkel*, 822 N.E.2d at 153-54 (citing W. Prosser, *Handbook on the Law of Torts* § 101, at 665 (4th ed. 1971)). Economic losses are viewed as "disappointed contractual or commercial expectations." *Id.* at 154 (citing *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003)). Thus, Indiana courts have defined economic loss as "the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Reed*, 621 N.E.2d at 1074 (quoting *Prairie Prod., Inc. v. Agchem Div.-Pennwalt Corp.*, 514 N.E.2d 1299, 1304 (Ind. 1987)). "Economic loss includes such incidental and consequential losses as lost profits, rental expense and lost time." *Id.* (citing *Dutton v. Int'l Harvester Co.*, 504 N.E.2d 313, 318 (Ind. App. Ct. 4th Dist. 1987)). Furthermore, "[d]amage to the product itself, including costs of its repair or reconstruction, is an 'economic

loss' even though it may have a component of physical destruction." *Gunkel*, 822 N.E.2d at 154. The Indiana Supreme Court has explained that "the theory underlying the economic loss doctrine is that the failure of a product . . . to live up to expectations is best relegated to contract law and to warranty either express or implied." *Id.* at 155. In that realm, the buyer and seller to a transaction are able to allocate the risk that an item being sold will not live up to expectations, and price the product accordingly. *Id.*

Thus, not only do both Illinois and Indiana recognize the economic loss doctrine, both States also recognize a relevant exception to the doctrine when a defective product injures "other property." *In re Chi. Flood Litig.*, 680 N.E.d at 275 (identifying as an exception to the economic loss rule "where the plaintiff sustained damage, *i.e., personal injury or property damage*, resulting from a sudden or dangerous occurrence") (citing *Moorman*, 435 N.E.2d 443); *Ind'polis-Marion Cnty. Pub. Library*, 929 N.E.2d at 726 ("where the injury to the plaintiff is from a defective product . . . the defendant is liable under a tort theory if the defect causes personal injury or damage to property other than the product . . . itself") (citing *Gunkel*, 822 N.E.2d at 153). Although both States allow a plaintiff to recover damages in tort where a product defect causes damage to other property, the exceptions to the economic loss doctrine are slightly different. *See Gunkel*, 822 N.E.2d at 154 n.2 (noting difference and citing *Am. Xyrofin, Inc. v. Allis-Chalmers Corp.*, 595 N.E.d 650, 656 (Ill. App. Ct. 2d Dist. 1992)). Specifically, in Indiana, "other property damage" standing alone is sufficient for the exception to apply, whereas in Illinois "other property damage" must be coupled with a sudden or calamitous event. *Trans States Airlines*, 682 N.E.2d at 54. In Illinois, "[n]either (1) an injury (personal injury or other property damage) standing alone nor (2) a sudden and calamitous occurrence standing alone is sufficient to bring a claim within the bounds of tort recovery." *Id.* at 55 (citing *In re Chi. Flood*

*Litig.*, 680 N.E.2d at 275.) Assuming that the alleged damage to the steel carrier belts constitutes other property, (R. 1, Compl. ¶¶ 10, 12), application of one state's law over the other could alter the outcome in this case; Federal Insurance would need to satisfy an additional element under Illinois law before the "other property damage" exception to the economic loss doctrine could be applied.[2] Therefore, it appears that there is a conflict between Illinois and Indiana law.

## B.    Illinois' Choice-of-Law Analysis

Having determined that a potential conflict exists, the Court applies Illinois' choice-of-law rules to determine which state's law applies to the instant action. *Klaxon Co.*, 313 U.S. at 496-97; *Auto-Owners Ins. Co.*, 580 F.3d at 547.    The Illinois Supreme Court has "adopted the choice-of-law analysis of the Second Restatement of Conflict of Laws." *Townsend*, 879 N.E.2d at 903 (citing *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263 (Ill. 2000); *Esser v. McIntyre*, 661 N.E.2d 1138 (Ill. 1996); *Nelson v. Hix*, 522 N.E.2d 1214 (Ill. 1988)).    "The cornerstone of the Second Restatement is the 'most significant relationship' test, the objective of which is 'to apply the law of the state that, with regard to the particular issue, has the most significant relationship with the parties and the dispute.'" *Burlington N. & Santa Fe Ry. Co.*, 906 N.E.2d at 91 (quoting E. Scoles, P. Hay, P. Borchers & S. Symeonides, *Conflict of Laws* § 2.14, at 61 (4th ed. 2004)).    The Second Restatement "contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6 in light of relevant contacts identified

---

[2]  Here, Plaintiff has not pleaded any facts that would support the finding of a sudden and dangerous occurrence.  A "sudden and dangerous occurrence" is an occurrence that is "highly dangerous and presents the likelihood of personal injury or injury to other property." *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 435 (Ill. App. Ct. 4th Dist. 2002) (quoting *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807-08 (N.D. Ill. 1996)); *see also Moorman Mfg. Co.*, 435 N.E.2d at 450 (noting that a crack that had developed on a grain storage tank "was not the type of sudden and dangerous occurrence best served by the policy of tort law that the manufacturer should bear the risk of hazardous products").

by general provisions like § 145 (torts) and § 188 (contracts)." *Townsend*, 879 N.E.2d at 903

(citing R. Crampton, D. Currie, & H. Kay, *Conflict of Laws: Cases—Comments—Questions* 117,

120 (5th ed. 1993)).

The parties agree that under Illinois' choice-of-law rules, Section 147 of the Second

Restatement is the starting point for a choice-of-law analysis in the instant action. (R. 28, Pl.'s

Resp. at 3; R. 29, Def.'s Reply at 3.) Section 147 of the Second Restatement provides:

> In an action for an injury to land or other tangible thing, the local law of the state
> where the injury occurred determines the rights and liabilities of the parties
> unless, with respect to the particular issue, some other state has a more significant
> relationship under the principles stated in § 6 to the occurrence, the thing and the
> parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 147, at 438 (1971). In other words, § 147 of the

Second Restatement raises the rebuttable presumption that where an action concerns an injury to

a tangible thing, "the law to be applied is that of the state where the injury occurred." *Burlington*

*N. & Santa Fe Ry. Co.*, 906 N.E.2d at 92 (citing Restatement (Second) of Conflict of Laws §

147, at 438 (1971)). Thus, because Indiana was the site of the injury to the cylinder drums, a

presumption exists in favor of applying Indiana law, unless Illinois has a more significant

relationship with the occurrence and the parties. *See id.*; *Townsend*, 879 N.E.2d at 905. This

presumption is a strong one that is difficult to overcome. *Townsend*, 879 N.E.2d at 903 ("Thus, a

presumption exists, which may be overcome only by showing a *more or greater* significant

relationship to another state.")

The second step of the choice-of-law analysis requires the Court determine if another

state has a more significant relationship to the action by testing the presumptive choice from step

one against the principles of § 6 of the Second Restatement in light of the contacts identified in §

145(2) of the Second Restatement. *Townsend*, 879 N.E.2d at 905. The Court first considers the

14

§ 145 contacts present in this case. Section 145(2) of the Second Restatement provides that the contacts to be taken into account in applying the principles of § 6 include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145, at 414 (1971). Generally, in a tort case, "the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred." *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990) (applying Illinois law).

First, as previously discussed, the dispute involves an injury to a tangible thing that occurred in Indiana, and thus a presumption is raised in favor of applying Indiana law. Restatement (Second) of Conflict of Laws § 147, at 438 (1971). Section 145 of the Second Restatement cautions that situations exist "where the place of injury will not play an important role in the selection of the state of the applicable law," such as when the place of injury is fortuitous or when the defendant could not foresee that his actions could result in an injury in that particular state. Restatement (Second) of Conflict of Laws § 145, at 419-20 (1971). Here, however, Indiana has a strong relationship to the occurrence. J.K. sold the cylinder drums to MonoSol, an Indiana company, and could therefore foresee that the cylinder drums would be used in Indiana.

The second § 145 contact to consider is the place where the conduct causing the injury occurred. The Illinois Supreme Court instructs courts to consider not only the plaintiff's theories of the case, but "all conduct from any source contributing to the injury." *Townsend*, 879 N.E.2d at 906 (noting that defendant pleaded affirmative defense of contributory negligence and taking

15

this conduct into account). The gravamen of Federal Insurance's complaint is that J.K., an Illinois corporation, negligently designed and manufactured the cylinder drums. (R. 1, Compl. ¶¶ 5, 15-18, 27-30.) Thus, under Federal Insurance's theory of its case, the culpable acts were committed in Illinois. That said, J.K. has pleaded an affirmative defense of contributory negligence by MonoSol, which is located in Indiana. (R. 11, Def.'s Ans. at 11.) As relevant conduct occurred in both Illinois and Indiana, the second § 145 contact does not favor one state over the other.

The third § 145 contact is the domicile, residence, place of incorporation, and place of business of the parties. Here, Federal Insurance is a New Jersey corporation, (R. 1, Compl. ¶ 1), and J.K. is an Illinois corporation with its principal place of business in Illinois, (*id.* ¶ 4). As between Indiana and Illinois, this contact favors Illinois.

The fourth § 145 contact is the place where the parties' relationship is centered. In the instant action, the relationship between Federal Insurance and J.K. arose from MonoSol's purchase of the cylinder drums from J.K., which is in Illinois. (*id.* ¶ 1.) Prior to purchasing the cylinder drums, MonoSol obtained a quote from J.K., which quote was drafted in Illinois. (R. 1-1, Ex. A, Quote & Purchase Order at 2-4.) That said, the cylinder drums were used in Indiana, (R. 1, Compl. ¶ 6), and J.K. attempted to repair MonoSol's cylinder drums in Indiana. (*id.* ¶ 9; R. 28, Pl.'s Resp. at 4). Thus, this contact does not favor one state over the other. In sum, the first contact favors Indiana, whereas the third contact favors Illinois, and the second and fourth contacts do not favor either state. Considered alone, the § 145 contacts do not override the presumption that Indiana law governs the substantive issues in this case. These contacts must now be evaluated in light of the general principles embodied in § 6 of the Second Restatement. *Townsend*, 879 N.E.2d at 906.

Section 6(2) of the Second Restatement identifies the following factors that are relevant

to the choice of the applicable rule of law:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6, at 10 (1971). Of these seven factors, the Illinois

Supreme Court singles out three of them as relevant in tort cases. *Townsend*, 879 N.E.2d at 906-

07; *see also Fisher v. Brilliant World Int'l*, No. 10 C 2381, 2011 WL 3471222, at *4 (N.D. Ill.

Aug. 4, 2011). Specifically, the Illinois Supreme Court looks at § 6(2)(b), the relevant policies

of the forum, § 6(2)(c), the relevant policies of other interested states and the relative interests of

those states in the determination of the particular issue, and § 6(2)(e), the basic policies

underlying the particular field of law. *Townsend*, 879 N.E.2d at 906-07.

The Court first assesses the basic policies underlying the particular field of law.

Restatement (Second) of Conflict of Laws § 6(2)(e), at 10 (1971). The economic loss doctrine

was originally "a limitation on who could bring a tort suit for the consequences of a personal

injury or damage to property: only the injured person himself, or the owner of the damaged

property himself." *All-Tech Telecom., Inc. v. Amway Corp.*, 174 F.3d 862, 865 (7th Cir. 1999)

(collecting cases). Individuals who only possessed commercial links to the owner could not

bring suit. *Id.* The rationale behind the doctrine is that "commercial disputes ought to be

resolved according to the principles of commercial law rather than according to tort principles

designed for accidents that cause personal injury or property damage." *Miller v. U.S. Steel

Corp.*, 902 F.2d 573, 575 (7th Cir. 1990) (noting that "tort law is a superfluous and inapt tool"

17

for resolving disputes over purely economic losses). Further, litigants should not be allowed "to opt out of commercial law by refusing to avail [themselves] of the opportunities which that law [provides.]" *Id.*; *see also Moorman Mfg. Co.*, 435 N.E.2d at 448 (noting that a purchaser may protect itself against risk by bargaining for a warranty, or accepting a lower price in lieu of a warranty, and that it is preferable to relegate the purchaser to contract remedies than to require all other consumers to pay more for a manufacturer's product so that the manufacture may insure against the possibility that his products will not meet his customers' expectations); *Ind'polis-Marion Cnty. Pub. Library*, 929 N.E.2d at 729-30 (noting first, that "the economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law," and second, that "liability should not be imposed when it creates a potential for liability that is so uncertain in time, class, or amount that a defendant should not fairly or practically be expected to account for the potential liability when undertaking the conduct that gives rise to it"). In short, the primary policy concerns underlying the economic loss doctrine are: "(1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk of economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." *In re StarLink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 839 (N.D. Ill. 2002) (quoting *Daanen & Janssen, Inc.*, 573 N.W.2d 842, 845 (Wis. 1998)). These underlying policy goals may be fulfilled regardless of whether the Court applies Illinois or Indiana law, because both states have adopted a version of the economic loss doctrine in an effort to meet these concerns. Thus, this factor does not favor the application of Illinois law over Indiana law.

18

The Court next considers the relevant policies of Indiana and the relative interests of Indiana in the determination of this particular issue. Restatement (Second) of Conflict of Laws § 6(2)(c), at 10 (1971). "The public policy of a state may be sought in its constitution, legislative enactments and judicial decisions." *Morris B. Chapman & Assocs., Ltd.*, 739 N.E.2d at 1270 (citing *Scholtens v. Schneider*, 671 N.E.2d 657 (Ill. 1996)). The Indiana Supreme Court has clearly stated that the economic loss doctrine "is only implicated where a plaintiff has suffered 'pure economic loss.'" *Ind'polis-Marion Cnty. Pub. Library*, 929 N.E.2d at 731. "Pure economic loss" in Indiana is defined as "pecuniary harm not resulting from an injury to the plaintiff's person or property." *Id.* Nonetheless, "damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property." *Gunkel*, 822 N.E.2d at 153. With respect to Indiana's interests in the instant action, Indiana has an interest in ensuring that safe products are used within its borders, and in deterring the use of defective products within its borders. Indiana also has an interest in protecting its citizens, such as MonoSol, who are personally injured or whose property is injured within its borders.

Finally, the Court considers the relevant policies of the forum, *i.e.*, Illinois. Restatement (Second) of Conflict of Laws § 6(2)(b), at 10 (1971). In Illinois, "[a]bsent injury to a plaintiff's person or property, a claim presents economic loss not recoverable in tort." *In re Chi. Flood Litig.*, 680 N.E.2d at 275 (citing *N. Ill. Gas Co. v. Vincent DiVito Construction*, 573 N.E.2d 243 (Ill. 1991)). Nonetheless, Illinois' "economic loss rule applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *Id.* To recover damages in tort for pure economic losses, an Illinois plaintiff

must demonstrate that she has sustained "other property damage" resulting from a sudden, dangerous, or calamitous occurrence. *Trans States Airlines*, 682 N.E.2d at 54-55; *In re Chi. Flood Litig.*, 680 N.E.2d at 275. The Illinois Supreme Court has stated that in those instances, "its strong interest in keeping the spheres of tort and contract separate outweighs the difficulties in making the deterioration versus calamitous occurrence distinctions." *Trans States Airlines*, 682 N.E.2d at 54. While Illinois may have a stronger interest than Indiana in maintaining the spheres of tort and contract separate, as suggested by its requirement that a plaintiff meet a higher hurdle in order to fall within the "other property" exception to the economic loss doctrine, that is not to say that Indiana does not have any interest in the same. *Id.* at 54-55. Illinois' "stronger interest" is not a sufficient reason to apply its law over Indiana law to this action. *See* Restatement (Second) of Conflict of Laws § 6, at 15 (1971) (noting that in instances where the policies of the interested states are largely the same, but where there are nevertheless minor differences between them, "there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved").

As Indiana has more than a modicum of interest in the instant action, and it cannot be said that the application of Indiana law to this action will not further the basic goals of the economic loss doctrine in both Indiana and Illinois, the § 6 factors do not serve to demonstrate that Illinois has a more significant relationship to this suit than Indiana. Having considered the § 145 contacts, in light of the § 6 factors, the Court concludes that the presumption that Indiana law should apply has not been overcome by a showing that Illinois has a more or greater significant relationship to this action than Indiana. Accordingly, the Court applies Indiana law.

**II.     Whether Indiana's economic loss doctrine bars recovery**

Federal Insurance argues that Indiana's economic loss doctrine does not bar its claims for negligence and strict products liability against J.K. because these claims meet the "other property damage" exception. (R. 28, Pl.'s Resp. at 4.) Federal Insurance relies on *Gunkel*, 822 N.E.2d at 153-55, to argue that damage resulting from a defective product is recoverable in tort if the defect causes damage to other property. (*Id.*) Federal Insurance also points out that in Indiana, property acquired separately from the defective good constitutes "other property." (*Id.*) Federal Insurance then asserts that not only were the MonoFlow spiral cylinder drums acquired separately from MonoSol's production line, but these cylinder drums also "caused the cutting of stainless steel carrier belts" and damaged Production Line Nos. 1 and 2, neither of which J.K. furnished. (*Id.*) The stainless steel carrier belts and production lines constitute "other property," and thus, Federal Insurance concludes, its claims are not barred by Indiana's economic loss rule. (*Id.* at 5.) Without citing to any authority, J.K. argues that "[t]he production line should be considered one unit, of which the cylinder drums were an essential component." (R. 29, Def.'s Reply at 8.)

Again, as discussed above, Indiana law provides that damage from a defective product may be recoverable under a tort theory if the defect causes damage to other property. *Gunkel*, 822 N.E.2d at 153. In *Gunkel*, the Indiana Supreme Court was squarely confronted with the question of what constitutes "other property" for purposes of the economic loss doctrine. 822 N.E.2d at 151. The court determined that "whether damaged property is 'other property' turns on whether it was acquired by the plaintiff as a component of the defective product or was acquired separately." *Id.* The court instructed that where "a component is sold to the first user as a part of the finished product," the component is not "other property" because the consequences of its failure are within the rationale of the economic loss doctrine. *Id.* at 155.

Property acquired separately from the defective good, however, is "other property," regardless of whether "it is, or is intended to be, incorporated into the same physical object." *Id.*

Here, Federal Insurance alleges that it hired J.K. to design and manufacture the Monoflow spiral cylinder drums "to replace the baffled shell cylinders originally installed on production lines at the MonoSol Facility." (R. 1, Compl. ¶ 5.) The allegations establish that the Monoflow spiral cylinder drums furnished by J.K. were acquired separately from the MonoSol production lines into which they were incorporated. Furthermore, Federal Insurance alleges that as a result of the defective Monoflow spiral cylinder drums, Production Line No. 2's stainless steel carrier belts were cut so as to remove the defective cylinder drum. (*Id.* ¶¶ 10, 12.) Federal Insurance's allegations that the defective products, the Monoflow spiral cylinder drums, were acquired separately from the production lines, sufficiently establish that the production lines constitute "other property" under Indiana law. Furthermore, as the production lines were physically damaged by cutting the production lines' stainless steel carrier belts, Federal Insurance has also sufficiently alleged that the defective product damaged "other property" thereby implicating the exception to Indiana's economic loss doctrine. *See Guideone Ins. Co. v. U.S. Water Sys. Inc.*, 950 N.E.2d 1236, 1245 (Ind. Ct. App. 2011) (concluding that "the 'other property' exception to the economic loss doctrine would permit tort recovery for the flood damage to [subrogors'] home because the damaged floor, walls, etc. were acquired separately from the water system and were not merely a component of the water system, but rather were separate, distinct items") (citing *Gunkel*, 822 N.E.2d at 156–57; *Ind'polis-Marion Cnty. Pub. Library*, 929 N.E.2d at 732. Thus, because Federal Insurance has sufficiently alleged that the defective Monoflow spiral cylinder drums caused damage to "other property," its negligence (Count I) and products liability (Count III) claims are not barred by the economic loss doctrine.

In reaching this conclusion, the Court does not comment on whether Federal Insurance will ultimately be successful, but only concludes that Federal Insurance has raised a claim under which it could potentially recover.

## CONCLUSION

For the foregoing reasons, J.K. Manufacturing's Motion to Dismiss (R. 9) is DENIED. The parties are requested to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. A status hearing is set for 9:45 a.m. on April 16, 2013.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:  March 28, 2013**